IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOYCE A. WISE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-642 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM JUDGMENT ORDER

AND NOW, this 18th day of September, 2006, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 6) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 8) be, and the same hereby is, denied. The Commissioner's decision of August 20, 2004, will be reversed and this case will be remanded to the Commissioner solely for a determination of the amount of benefits to which plaintiff is entitled pursuant to sentence 4 of 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff submitted a claim for supplemental security income on February 21, 2003, then filed an application for disability insurance benefits on March 3, 2003, both alleging a disability onset date of November 23, 2002, due to depression, borderline personality disorder and post-traumatic stress disorder. Plaintiff's applications were denied initially. At plaintiff's request, an ALJ held a hearing on July 28, 2004, at which

plaintiff, represented by counsel, appeared and testified. On August 20, 2004, the ALJ issued a decision finding that plaintiff is not disabled. On April 8, 2005, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 26 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). Plaintiff has a high school education and above (20 C.F.R. §§404.1564(b)(4) and 416.964(b)(4)), and past relevant work experience as a nurse's aide, home health aide and cashier, but has not engaged in any substantial gainful activity since her alleged onset date. For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on her alleged onset date and has acquired sufficient quarters of coverage to remain insured through at least December 31, 2004.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of major depressive disorder, recurrent, posttraumatic stress disorder and borderline personality disorder, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of the Regulations.

The ALJ further found that plaintiff retains the residual functional capacity to perform work at any exertional level but with certain restrictions recognizing the limiting effects of her mental impairments.[1]  Relying on the vocational expert's testimony, the ALJ found that, although plaintiff cannot perform her past relevant work, she nevertheless retains the ability to perform other work existing in significant numbers in the national economy in light of her age, education, work experience and residual functional capacity .  Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months.  42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A).  The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."  42 U.S.C. §§423(d)(1)(B) and 1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a

---

[1] The ALJ found that plaintiff "is limited to jobs at a low stress level, defined as unskilled work involving routine and repetitive processes, dealing with things rather than people."

claimant is under a disability.[2]  20 C.F.R. §§404.1520 and 416.920.  Generally, if the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).  Additionally, 20 C.F.R. §§404.1520a and 416.920a, which deal specifically with the evaluation of mental impairments, must be followed by the Commissioner whenever there is evidence of a mental impairment that allegedly prevents a claimant from working.  Plummer, 186 F.2d at 432.

Here, plaintiff contends: (1) that the ALJ erroneously found at step 3 that plaintiff does not meet any of the listings for mental disorders set forth in the regulations; and, (2) erroneously found at step 5 that plaintiff retains the ability to perform substantial gainful activity.  Upon a review of the record, this court concludes that the ALJ's step 3 finding that plaintiff's severe mental impairments do not meet or equal any listed impairment is not supported by substantial evidence.[3]

---

[2] The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§416.920 and 404.1520.  See also Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003).

[3] Because the court finds that the record supports a finding of disability at step 3 of the sequential evaluation process, it need not address plaintiff's challenges to the ALJ's step 5 findings.  See, Barnhart v. Thomas, 124 S.Ct. 376 (2003).

At step 3, the ALJ must determine whether a claimant's impairment matches, or is equivalent to, one of the listed impairments. <u>Burnett v. Commissioner of Social Security Administration</u>, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. <u>Knepp v. Apfel</u>, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §§404.1520(d) and 416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is per se disabled and no further analysis is necessary." <u>Burnett</u>, 220 F.3d at 119.

The burden is on the ALJ to identify the relevant listed impairment in the federal regulations that compares with the claimant's impairment. <u>Id</u>. at 120 n.2. The ALJ must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." <u>Id</u>.

In this case, the ALJ correctly identified the relevant listed impairments correlating to plaintiff's mental disorders of major depressive disorder, recurrent (Listing 12.04 for affective disorders), post traumatic stress disorder (Listing 12.06 for anxiety related disorders) and borderline personality disorder (Listing 12.08 for personality disorders).

However, the ALJ found that none of plaintiff's impairments meet or equal any of those relevant listed impairments, concluding

that although plaintiff meets the "A" criteria of 12.04, 12.06 and 12.08, she does not meet the "B" criteria of any of those three listings, nor does she meet the "C" criteria of Listing 12.04 or 12.06.  It is the ALJ's conclusion that plaintiff's major depressive disorder does not meet the "C" criteria of Listing 12.04 that fails to withstand substantial evidence scrutiny.

Listing 12.04 addresses affective disorders, such as plaintiff's major depressive disorder, recurrent, and provides in pertinent part:

> Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied . . . .

At issue in this case is whether the C criteria of Listing 12.04 are satisfied.  The C criteria of 12.04 are:

> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

>    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such arrangement.

Here, the ALJ found that plaintiff does not meet the C criteria because her condition does not result in any of the 3 scenarios set forth in the above stated subparagraphs. However, upon review, it is the court's belief that the ALJ's finding is not supported by substantial evidence because the record establishes that plaintiff's affective disorder in fact has resulted in repeated episodes of decompensation, each of extended duration, as defined in the regulations.

The regulations define "episodes of decompensation" as:

> [E]xacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.

20 C.F.R., Appendix 1, Listing 12.00, ¶C.4.

The regulations go on to state that such episodes may be demonstrated by an exacerbation in symptoms or signs that ordinarily would require increased treatment or a less stressful situation and, importantly, that such episodes "may be inferred from medical records showing significant alteration in medications; or documentation of the need for a more structured psychological support system (e.g. hospitalizations . . .) Or other relevant information in the record about the existence, severity, and duration of the episode." Id.

The record in this case contains undisputed medical evidence that plaintiff was admitted to Butler Memorial Hospital for inpatient treatment for depression on seven occasions between November of 2002 and December of 2003: (1) on November 23, 2002, following a suicide attempt by overdose (6 days) (R. 161); (2) on February 6, 2003, with suicidal ideation (5 days) (R. 171-2); (3) on February 12, 2003, less than 24 hours after discharge, after another overdose (16 days)(R. 188); (4) on April 28, 2003, for self-mutilation and suicidal intent (7 days) (R. 281-287); (5) on July 9, 2003, for increased depression and thoughts of strangling herself (5 days) (R. 288-296); (6) on October 8, 2003 (6 days) (R. 308-310); (7) on December 15, 2003, for depression, suicidal ideation and self mutilation (5 days) (R. 297-304).

The foregoing instances of hospitalizations resulting from an exacerbation in plaintiff's symptoms clearly constitute "episodes of decompensation" within the meaning of the regulations. While the ALJ recognized them as such, he nevertheless concluded that these repeated episodes of decompensation were not "of extended duration" as required to meet the Listing for affective disorders at 12.04. The court agrees with plaintiff that the ALJ's finding in that regard is not supported by the record.

The term "repeated episodes of decompensation, each of extended duration" is defined in the regulations to mean "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R., Appendix 1, §12.00, ¶C.4. However, the regulation also provides that "[i]f you have

experienced more frequent episodes of shorter duration, or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence."   Id.

In this case, plaintiff experienced more frequent episodes of decompensation over the course of a one-year period, on average one every two months, albeit most of shorter duration than the 14 day period contemplated by the regulation.  Because the ALJ did not find 3 episodes of decompensation lasting more than 2 weeks, he concluded that the C criteria of Listing 12.04 were not met.  However, upon a thorough review of the entire record, including the medical records of plaintiff's treating physicians and therapists as well as plaintiff's own testimony, the court is convinced that the evidence in this case establishes that plaintiff's more frequent episodes of shorter duration are of equal severity to the listed 3 episodes of 2 weeks' duration to satisfy the C criteria requirement of repeated episodes of decompensation, each of extended duration.

Plaintiff's hospitalizations in this case were not merely the product of severe depressive symptoms but were in every instance precipitated by either suicidal ideation or, on two occasions, actual suicide attempts by overdose.  In fact, a longitudinal review of the record establishes that plaintiff has a long history of mental health hospitalizations and prior suicide attempts all the way back to the age of 13, as well as a long-standing history

of self-mutilation, including cutting herself and burning herself with cigarettes. In addition to her hospitalizations, plaintiff has received regular mental health treatment from doctors and therapists on a consistent basis since 1997, and, commencing in March of 2003, she began participation in a "partial hospitalization" program in which she attends group sessions three times a week.

In not finding that plaintiff's more frequent episodes of decompensation were not of equal severity, the ALJ downplayed most of plaintiff's hospitalizations by noting that plaintiff's "remaining admissions in 2003 were related to suicidal ideation and a need for adjustment of medication as opposed to following an actual overdose." (R. 21). However, the regulations explicitly recognize that episodes of decompensation can be inferred from medical records showing significant alteration in medication, and the court finds it somewhat absurd to suggest that the hospitalization of an individual, who already has made numerous attempts on her own life, for "mere" suicidal intent is somehow distinguishable or less serious than her hospitalizations for the actual overdoses.

In light of plaintiff's frequent hospitalizations for recurrent depression with suicidal intent, even in the midst of her participation in a partial hospitalization program, the court believes that a finding that plaintiff experiences repeated episodes of decompensation, each of extended duration, is not only well supported by the medical record, but warranted by it.

Accordingly, the ALJ's finding to the contrary fails to withstand substantial evidence scrutiny.

When the C criteria of Listing 12.04 properly are analyzed under the definitions set forth in the introductory paragraphs, the medical evidence of record is sufficient to establish that plaintiff in fact does meet those criteria. The record is replete with both medical reports and testimonial evidence from plaintiff sufficient to establish that plaintiff's affective disorder has resulted in repeated episodes of decompensation, each of extended duration, as that term is defined in the introductory paragraph to the listings for mental disorders at 12.00 of the regulations.

Here, the record establishes that plaintiff suffers from a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of her abilities to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, with repeated episodes of decompensation, each of extended duration. Accordingly, the record supports a finding that plaintiff meets the C criteria of Listing 12.04 rendering her per se disabled under the Act and its regulations.

When the record has been developed fully, and when substantial evidence in the record as a whole indicates that a claimant is disabled and entitled to benefits, it is unreasonable to remand because of the resulting delay in receipt of benefits, and the decision of the Commissioner will be reversed. <u>Podedworny</u>

v. Harris, 745 F.2d 210, 221-222 (3d Cir. 1984).  Here, the record has been developed fully and substantial medical evidence exists supporting a finding that plaintiff is disabled at step 3 of the sequential evaluation process.  Therefore, a remand for additional evaluation of the evidence would be inappropriate in this case.

Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings solely to determine the amount of benefits to which plaintiff is entitled.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc:  William J. Remaley, Esq.
     Berger & Green
     5850 Ellsworth Ave., Suite 200
     Pittsburgh, PA 15232

     Paul Skirtich
     Assistant U.S. Attorney
     U.S. Post Office & Courthouse
     700 Grant Street, Suite 400
     Pittsburgh, PA 15219